IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| A. FLANIGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 04514 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | Judge John J. Tharp, Jr. |
| UNIVERSITY OF ILLINOIS AT | ) | |
| CHICAGO; DMITRI T. AZAR, an | ) | |
| individual; KAREN J. COLLEY, an | ) | |
| individual; URETZ J. OLIPHANT, an | ) | |
| individual; JEAN HOLLEY, an | ) | |
| individual; MARCI J. FANTI, an | ) | |
| individual; and DOES 1-X, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons set forth in the Statement below, the Court grants Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Dkt. 13; denies Defendants' Motion Pursuant to Fed. R. Civ. P. 11(c)(2), Dkt. 23; and denies Plaintiff's Motion for Leave to File Second Amended Complaint, Dkt. 28. Counts I and II of Plaintiff's Amended Complaint ("Complaint" or "Compl"), Dkt. 4, are dismissed with prejudice; Counts III and IV are dismissed without prejudice.

**STATEMENT**

In *Williams v. Wendler*, 530 F.3d 584 (7th Cir. 2008), the Seventh Circuit squarely rejected the notion that there is a constitutional right to continued enrollment in post-secondary education, observing that recognition of such a right would, among other things, "imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly." *Id*. at 589. This case presents that scenario. Plaintiff Asa Flanigan filed this action in June 2013 alleging due process and other claims against the Board of Trustees of the University of Illinois at Chicago ("UIC") and various UIC academic and administrative personnel after he failed a medical school examination. Because *Williams* and other Seventh Circuit authority—including another case involving Flanigan's counsel that was decided during briefing on the motions addressed in this opinion—make plain that a flunked test and purported deviations from university procedures for challenging it do not give rise to a constitutional claim, the Court grants Defendants' motion to dismiss Flanigan's claims and denies Flanigan's motion for leave to file a Second Amended Complaint.

**I.     Background**

The current Amended Complaint (a version practically identical to the original for present purposes) includes four counts—two asserting denials of procedural and substantive due process under 42 U.S.C. § 1983 and the Fourteenth Amendment (Counts I and II), and two asserting state common law claims for breach of contract and intentional infliction of emotional distress (Counts III and IV)—all stemming from Flanigan's failure of a "make-up examination" during his second year curriculum as a UIC medical student. Compl., Dkt. 4, ¶¶ 17-29. The Defendants include UIC, five individual members of its medical school academic and administrative personnel, and unnamed "Does I-X" (collectively, the "Defendants").

Flanigan's Complaint alleges that he successfully completed his second year curriculum as a UIC medical student for the 2011-2012 academic year, "with the exception of Fundamentals of Clinical Practice (FCP)." *Id.* at ¶¶ 17-18.[1] According to the Complaint, Flanigan also "did not pass the makeup examination" for this course, which he alleges was "capriciously graded" by Defendant Dr. Jean Holley. *Id.* at ¶¶ 18-20. Specifically, Flanigan complains that while he was taking this "FCP make-up examination" on June 29, 2011, he realized that "the examination was not in an appropriate format as it was short answer rather than multiple choice and the format of the exam was dramatically different from the examinations previously administered during the academic year." *Id.* at ¶ 19. Flanigan further alleges that he thereafter corresponded with his academic advisor, Defendant Dr. Uretz Oliphant, "to ask for guidance with regard to his concerns about the FCP course and FCP make-up examination and how to dispute the grading and format of the examination." *Id.* at ¶ 20. According to the Complaint, Flanigan "was erroneously informed he had to file a 'petition' to allow him to take a second retake of the FCP course," *id.*, and this advice by Dr. Uretz was "erroneous" because "the correct procedure" to challenge his failing grade on the make-up exam was not such a "petition," but rather, "to file a grievance." *Id.* at ¶ 26. But Flanigan allegedly followed his advisor's "erroneous instructions" and "spent more than three months filing the petition," *id.*, which an Administrative Officer, Defendant Marci Fanti, ultimately denied. *Id.* at ¶ 22.

Flanigan alleges that on September 14, 2011, he was informed of Fanti's decision "explaining that after thorough review of his academic record," Fanti was "denying his petition to be granted a second retake of the FCP examination and requiring [Flanigan] retake his second year of medical school." *Id*. According to Flanigan's Complaint, Fanti's review "failed to address the specific points of his concerns with the examination, i.e., she did not consider the fairness of the grading and format of the examination," and instead "considered only [Flanigan's] academic record, which was not relevant to the relief" he had sought. *Id.* at ¶ 23. So two days later, on September 16, 2011, Flanigan informed Defendant Karen J. Colley "that he wanted to file an appeal to the decision of Fanti." *Id.* at ¶ 24. Ten days after that, on September 26, 2011,

---

[1] In keeping with the standard applicable to Defendants' motion to dismiss under Rule 12(b)(6), the Court construes Flanigan's Complaint in the light most favorable to him, drawing all reasonable inferences in his favor, *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012), to the extent any reasonable inferences can be drawn from the facts alleged. *See Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013) ("We can draw no such inferences from the facts included in Charleston's Complaint.").

Flanigan was informed that the office of the Dean had concluded that Flanigan's "grievance" against Defendant Holley for "capricious grading" was "substantiated," and had "granted" Flanigan's "request to be administered a multiple choice examination," which "if he passed," would obviate the requirement for him "to repeat his second year of medical school." *Id.* at ¶ 25. But not all's well that ends well, because Flanigan complains that "this decision came too late." *Id.* at ¶ 26. Flanigan alleges that he "was forced to begin a repeat of his second year of medical school during the aforementioned appeal process," and because his "appeal was finally granted late in the fall semester," he "was thus forced to delay the start of his third year of medical school," and "will now graduate and enter the work force at least one year later." *Id.* at ¶ 27. So, Flanigan filed this case against UIC and the other Defendants on June 19, 2013, asserting procedural and substantive due process violations, breach of contract, and intentional infliction of emotional distress. *See* Dkt. 1.

Flanigan's counsel at this time was also counsel of record in a Seventh Circuit appeal from a decision in this district rejecting virtually the same constitutional and state law claims against UIC and various individual defendants as Flanigan was asserting in this case. *See Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, No. 12 C 9463, 2013 WL 1751519 (N.D. Ill. Apr. 19, 2013), *aff'd*, 741 F.3d 769 (7th Cir. 2013) (appeal docketed May 24, 2013). Consistent with settled Seventh Circuit precedent, the district court in *Charleston* held that there is "no recognized constitutional right to continued enrollment in a post-secondary education program," and the plaintiff medical student's procedural due process claim in *Charleston* was therefore "foreclosed by the absence of a protected right." *Charleston*, 2013 WL 1751519, at * 3 (citing *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009); *Park*, 692 F.3d at 832). The district court further held that the substantive due process claim in *Charleston* similarly failed for lack of a "fundamental right," since the "opportunity to receive a post-secondary education has not been recognized as a fundamental right entitled to Fourteenth Amendment protection," nor "is the opportunity to become a doctor a fundamental right guaranteed by the Fourth Amendment." *Id*. at *4 (citing Supreme Court and Seventh Circuit cases).

While Charleston's appeal to the Seventh Circuit was pending, Defendants moved to dismiss this case, citing (among other decisions) the district court's decision in *Charleston* and noting that Flanigan's counsel here was also Charleston's counsel there. *See* Dkt. 14, at 8 n.3, 11 n.6. Then on December 20, 2013, the Seventh Circuit affirmed in *Charleston*, explaining that "our circuit has rejected the proposition that an individual has a stand-alone property interest in an education at a state university, including a graduate education," as was necessary to support Charleston's procedural due process claim; and "our circuit has disclaimed the existence of a fundamental right to a graduate education" or "to pursue the profession of his choosing," as was necessary to support Charleston's substantive due process claim. *Charleston*, 741 F.3d at 772-75 (citing Supreme Court and Seventh Circuit decisions, including *Bissessur*, 581 F.3d at 601; *Williams*, 530 F.3d at 589; and *Park*, 692 F.3d at 832). Despite this ruling, Flanigan and his counsel nevertheless opposed Defendants' motion to dismiss this case.

Notably, Flanigan's brief in opposition to Defendants' motion to dismiss this case cited neither the Seventh Circuit's decision in *Charleston* nor the district court's decision in that case. *See* Dkt. 21. Instead, it sought to avoid *Charleston's* rejection of a constitutional right to continued post-secondary education by asserting that Flanigan has a property interest in his UIC education arising from "an express and implied contract with the University," Dkt. 21, at 6,

3

which the Seventh Circuit had acknowledged as a potential basis for a property interest in *Charleston*. *See* 741 F.3d at 773 ("Charleston could establish that he has this legitimate entitlement by pleading the existence of an express or implied contract with the medical school."). Defendants were nonplussed. On February 25, 2014, they moved for Rule 11 sanctions against Flanigan and his counsel, contending that their opposition to Defendants' motion to dismiss was "unwarranted by existing law as reflected in *Charleston*." *See* Dkt. 23, ¶¶ 4-7. Undeterred, on March 17, 2014, Flanigan and his counsel moved for leave to file a second amended complaint in this case, Dkt. 28, dropping Flanigan's procedural due process claim, but adding a First Amendment claim for Defendant' alleged "campaign of retaliation against [Flanigan] as a direct result of filing this lawsuit." Dkt. 28-1, ¶ 54. And just to round out this picture, Flanigan's counsel petitioned for certiorari in *Charleston*, Dkt. 33-1, which the Supreme Court denied on June 2, 2014. *See Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 134 S. Ct. 2719 (2014).

Now pending before this Court are: (1) Defendants' Motion to Dismiss Flanigan's Amended Complaint, Dkt. 13; (2) Flanigan's Motion for Leave to File Second Amended Complaint, Dkt. 28; and (3) Defendants' Motion Pursuant to Rule 11(c)(2), Dkt. 23. Each is addressed in turn below.

## II.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The immediate obstacle to Flanigan's procedural due process claim—as was the case with Charleston's procedural due process claim—is his lack of a property interest. As the Seventh Circuit reconfirmed in *Charleston,* the first step in any procedural due process analysis is identification of the protected property or liberty interest at stake. *Charleston*, 741 F.3d at 772. The complaint in *Charleston* faltered under this standard because the facts alleged failed to demonstrate a protectable property interest or fundamental right necessary to support a procedural or substantive due process claim. *Charleston*, *Id*. at 772-75. Charleston's claim thus "failed at the first step," *id.*, and so does Flanigan's. Flanigan appears now to concede as much, since he has dropped his procedural due process claim from his proposed Second Amended Complaint. *See* Dkt. 28, at 4, ¶ 6. But the same problem plagues Flanigan's substantive due process claim as well. For without a property interest, Flanigan must identify a "fundamental right" to support such a claim, *Charleston*, 741 F.3d. at 775, and he has identified neither.

As noted above, the Seventh Circuit has made clear that a medical student such as Flanigan has no "stand-alone property interest in an education at a state university, including a graduate education," *id.* at 772—a point of law that Flanigan tacitly concedes in his Reply in support of his Motion for Leave, emphasizing that he is "no longer pleading that he was denied state-created process as was the Plaintiff in *Charleston*." Dkt. 33, at 9. Instead, Flanigan claims he has pled a "legally protected entitlement to his continued education at the University, which includes the opportunity to be able to progress through to graduation without the delay caused by said illegal practices . . . provided to him through the grievance procedures at the University." *Id.* Flanigan makes the same argument in opposition to Defendants' motion to dismiss: "Flanigan alleged in his Complaint that he has an express and implied contract with the University in connection with rights explicitly guaranteed by the published policies of the College of Medicine and the University of Illinois regarding the grievance procedure and petition for a second retake of his FCP examination." *See* Dkt. 21, at 6. The argument appears to attempt to mold Flanigan's

4

claim to language in the Seventh Circuit's decision in *Charleston* noting that the plaintiff there "could establish that he has this legitimate entitlement by pleading the existence of an express or implied contract with the medical school." *Charleston*, 741 F.3d at 773. But Flanigan's argument here ignores far more applicable language in *Charleston* explicitly rejecting such "contractually-guaranteed university process" as a constitutionally protected property interest:

> ***We have rejected similar claims of an "interest in contractually-guaranteed university process" many times***, *see*, *e.g.*, *Park v. Indiana University School of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012), ***but we will be clear once more: a plaintiff does not have a federal constitutional right to state-mandated process.*** *See Olim v. Wakinekona*, 461 U.S. 238, 250-51, 203 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) ("***Process is not an end in itself . . . . The State may choose to require procedures . . . but in making that choice the State does not create an independent substantive right.***"); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, ***a violation of state law (for purposes of this case the student judicial code may be treated as state law) is not a denial of due process, even if the state law confers a procedural right.***"). Like other student-plaintiffs before him, ***all that Charleston alleges is that the medical school conferred on him certain procedural rights.*** It may have been unfair for the university not to follow its own procedures in Charleston's case, but ***it was not unconstitutional.***

*Charleston*, 741 F.3d at 773-74 (emphasis added).

Flanigan's purported interest in UIC's "policies" and "grievance procedures" plainly falls under these holdings. *See*, *e.g.*, Compl., Dkt. 4, ¶ 32 ("Defendant failed to comply with its own policies and due process protections set forth in its University's Student Disciplinary Policy and the University Statutes by failing to allow Plaintiff to submit a grievance"); Flanigan Opp., Dkt. 21, at 6 (asserting "rights explicitly guaranteed by the published policies of the College of Medicine and the University of Illinois regarding the grievance procedure"); Mot. for Leave Reply, Dkt. 33, at 9 (asserting "right to pursue a student academic grievance pursuant to the University's Student Academic Grievance Procedures . . . provided to him through the grievance procedures at the University.").

While Flanigan tries to recast this purported "contractual right" as one establishing "entitlement to his continued enrollment in the University," Dkt. 21 at 6; Dkt. 28-1, ¶ 35, or "the opportunity to be able to progress through to graduation without the delay caused by said illegal practices in denying his right to pursue a student academic grievance" (a new locution trotted out in Flanigan's proposed Second Amended Complaint and supporting motion papers, *id*.; Dkt. 33, at 9), the Seventh Circuit rejected just such unsupported refashioning in *Charleston*, where the plaintiff's complaint similarly alleged "violation of the university's 'Student Disciplinary Policy' and 'University Statutes'" without identifying any "specific promises that the university made to him through its disciplinary policy" or the "contents" of its "University Statutes." *Charleston*, 741 F.3d at 773. Flanigan, as did Charleston, has failed to identify any specific provision set out in any of these materials that promises him the right to continue unabated his progress toward a degree if the university deviates from any of its published grievance procedures. Having failed to

demonstrate any such specific contractual right to an education conferred in these materials, the Seventh Circuit concluded that the plaintiff in *Charleston* was merely "claiming that the school promised him ***the procedures*** set out in the university's disciplinary policy," like "other student-plaintiffs before him," but such "procedural rights" have long been rejected as a constitutionally protected property interest. *Id.* (emphasis in original). This clear holding applies directly to Flanigan's blanket reliance on the very same UIC "Student Disciplinary Policy," "University Statutes," and other "policies" and "procedures." Dkt. 4, ¶ 32; Dkt. 21, at 6; Dkt. 33, at 9. These confer precisely the same "contractually-guaranteed university process" that the Seventh Circuit rejected as a constitutional property interest in *Charleston*.

Flanigan thus has no property interest to support his procedural due process claim, and that failing dooms his substantive due process claim as well. While a substantive due process claim may be based on either a "property interest" or a "fundamental right," the standards applied to each differ: "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Charleston*, 741 F.3d at 774 (quoting *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003)). The standard that Flanigan alleges in support of his substantive due process claim—that Defendants' actions "were arbitrary and capricious, and were not rationally related to any legitimate interest," Compl. Dkt. 4, ¶ 39—thus "presupposes" that he "has a property interest that the state can deprive him of." *Charleston*, 741 F.3d at 774 (citing *Bissessur*, 581 F.3d at 603). But, as discussed above, Flanigan has no property interest in enforcement of the University's grievance procedures. He therefore would need to establish a "fundamental right" to support his substantive due process claim. *Id.* at 774-75. But the only purported right Flanigan asserts in support of this claim—"a clearly established right to equal access to all benefits and privileges of a public higher education," Compl., Dkt. 4, ¶ 38—is once again precisely the same right alleged and flatly rejected in *Charleston*: "Charleston claims that he has a fundamental right to 'all benefits and privileges of a public higher education.' He has no such thing . . . . our circuit has disclaimed the existence of a fundamental right to a graduate education" and "a fundamental right to pursue the profession of his choosing." *Charleston*, 741 F.3d at 774-75; *see also id.* at n.3 (noting that Charleston's complaint, like Flanigan's, alleged this to be a "'clearly established' right").

Flanigan's procedural and substantive due process claims (Counts I and II) therefore both fail as a matter of law, and those claims are dismissed with prejudice. Moreover, absent a federal cause of action to support supplemental jurisdiction over Flanigan's state common law claims—for, as shown below, Flanigan's newly proposed First Amendment Claim similarly fails as a matter of law—those state claims (Counts III and IV) will be dismissed as well. *See RWJ Mgmt. Co. v. BP Prods. North Am., Inc.*, 672 F. 3d 476, 479 (7th Cir. 2012) ("presumption" is that court will relinquish supplemental jurisdiction over state law claims when federal claims are dismissed); *Wilson v. Price*, 624 F.3d 389, 395 (7th Cir. 2010) ("Because the federal claims were properly dismissed, it was also appropriate for the district court to dismiss the pendent state law claims in the absence of any independent basis for federal jurisdiction.") (citing *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003)). Though dismissal of Flanigan's state law claims must be without prejudice. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 532-33 (7th Cir. 2011) (once district court declines to exercise supplemental jurisdiction over state claims, "proper course" is to dismiss them without prejudice).

6

### III.  Motion For Leave to File Second Amended Complaint

Rule 15(a) provides that leave to amend should be "freely" given "when justice so requires," and Flanigan seeks leave to file a proposed second amended complaint that he maintains would cure any problems with the present Complaint. Leave Reply, Dkt. 33, at 4. But as the Seventh Circuit acknowledged in *Charleston*, the liberal Rule 15 re-pleading standard is tempered by "'broad discretion to deny leave to amend' where 'the amendment would be futile.'" *Charleston*, 741 F.3d at 776 (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). That is the case with Flanigan's proposed complaint.

The only federal claims proposed in Flanigan's Second Amended Complaint are for "Substantive Due Process" (Count I) and "First Amendment Right to Petition" (Count IV). *See* Dkt. 28-1. The substantive due process claim requires little additional commentary; the only new adornment to this claim is Flanigan's reference to "the University's Student Academic Grievance Procedures." *Id.* at ¶ 35. Specifically, Flanigan now alleges "a legally protected entitlement to his continued education at the University, which includes the opportunity to be able to progress through to graduation without the delay caused by said illegal practices in denying his right to pursue a student academic grievance pursuant to the University's Student Academic Grievance Procedures." *Id.* But once again, Flanigan "does not describe the specific promises that the university made to him through" these Procedures, identify their contents, or otherwise explain how they conferred "a legally protected entitlement to his continued education at the University." *See Charleston*, 741 F.3d at 773. This new allegation is thus more of the same "contractually-guaranteed university process" alleged in Flanigan's First Amended Complaint, and "none of it sustains his constitutional claims." *Id.* at 777 (proposed allegations on appeal of additional procedural complaints against UIC were a mere "rehash" of plaintiff's original allegations and therefore did not substantiate further amendment).

Flanigan's attempt to add a First Amendment theory to the mix fares no better. His second proposed federal claim—for "violation of Plaintiff's First Amendment right to petition the government for the redress of grievances," Dkt. 28-1, ¶ 55—alleges that "Defendants have begun a campaign of retaliation against Plaintiff as a direct result of Plaintiff filing the instant lawsuit," as "set forth in paragraphs 30-35." *Id.* Paragraphs 30-35 in turn reveal more UIC student "grievances" about the handling of Flanigan's previous UIC student "grievances," allegedly in violation of "the University's Student Academic Grievance Procedures."[2] (The right

---

[2] *See, e.g., id.* at ¶ 30 (alleging that UIC "refused to follow policy regarding Plaintiff's" OAD and COM grievances "by failing to forward the grievances to the University President" and by "assign[ing] University officials . . . to investigate Plaintiff's claims and decide Plaintiff's grievance despite the fact that Plaintiff had previously accused them"); ¶ 31 (alleging that COM grievance hearing officer "retaliated against Plaintiff by dismissing, without cause, all pending grievances" and "then ignored Plaintiff's appeal of his OAE grievance and his COM grievance"); ¶ 32 (alleging UIC "retaliated against Plaintiff by allowing Kaufman to serve as a grievance officer, despite the fact that he was implicated in that grievance" and "then Kaufman retaliated by upholding the decision dismissing all pending grievances Plaintiff filed"); ¶ 33 (alleging that UIC "retaliated against Plaintiff by allowing the Chancellor to provide a final decision on Plaintiff's grievance appeal, despite the fact that she was implicated in that grievance for committing policy violations and for allowing others to serve as investigators for the

to petition the government for redress of grievances is thus meant quite literally in this case.) To state such a First Amendment "retaliation" claim, Flanigan must establish that he (1) engaged in activity protected by the First Amendment, (2) suffered a deprivation that would likely deter first Amendment activity in the future, and (3) the First Amendment activity was at least a motivating factor in Defendants' decision to take the retaliatory action. *Woodruff v. Mason*, 542 F3d 545, 551 (7th 2008). Flanigan's proposed claim meets none of these criteria.

As to the first element, Flanigan acknowledges that the question of whether his activity was "constitutionally protected" is "a question of law" for the Court, Leave Reply, Dkt. 33, at 5; *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013 (whether "speech was constitutionally protected" is "a question of law to be decided by the court"), but asserts that "speech" involving "a matter of public concern" satisfies this requirement. Dkt. 33, at 5; *Volkman v. Ryker*, 736 F.3d 1084, 1089. It is certainly true that the "filing of a lawsuit can be an exercise of the First Amendment right of free speech if, as in 'cause' litigation, the suit articulates public concerns." *Guth v. Tazwell Cnty.*, 698 F.3d 580, 585-86 (7th Cir. 2012). But Flanigan's didn't. Despite his contention that this lawsuit raised issues regarding "the quality of education provided to medical students and future physicians," Dkt. 33, at 7, the "sole aim" of this case has been to seek compensation for a "delay" of Flanigan's "third year of medical school" and the attendant "financial loss as he will now graduate and enter the work force at least one year later." Compl., Dkt. 4, ¶ 27; Proposed Compl., Dkt. 28-1, ¶ 25; *see also Guth*, 698 F.3d at 586 ("the sole aim of the plaintiff's zoning suit was to enhance the value of her property"). Thus, even if Flanigan's suit could be construed as "touching a subject of potential interest to the public" (which in the Court's view would be a stretch), that would not convert the case into "anything other than personal." *See Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) ("context and form" of plaintiff's "grievance" was "consistent with the vindication of a personal interest, rather than a public concern, and the content of the grievance—while touching a subject of potential interest to the public—does not convince us that his purpose was anything other than personal").

Flanigan's complaint in this case thus fails to constitute constitutionally protected speech on a matter of "public concern."[3] Still, a suit such as Flanigan's, which is "designed to rectify a

---

grievance who were also implicated for violations in the grievance"); ¶ 35 (alleging "illegal practices in denying his right to pursue a student academic grievance pursuant to the University's Student Academic Grievance Procedures").

[3] While the parties here agree that "speech must involve a matter of public concern" to be constitutionally protected, Dkt. 30-1, at 3; Dkt. 33, at 5, the Court notes Seventh Circuit authority indicating that the "public concern" requirement may not apply to the speech, or right to petition, of a non-public employee (or student) such as Flanigan. *See*, *e.g.*, *Watkins v. Kasper*, 599 F.3d 791, 795 (7th Cir. 2010) ("In *Bridges*, we generally disavowed the public concern test in prisoner free speech cases . . . . it's time to completely jettison the public concern test from our prisoner free speech jurisprudence") (citing *Bridges v. Gilbert*, 557 F.3d 541, 550-51 (7th Cir. 2009)); *Dobbey v. Ill. Dept. of Correct.*, 574 F.3d 443, 447 (7th Cir. 2009) ("This is not the case in which to try to straighten out the law of petitioning for redress of grievances" and whether "the right does not embrace purely personal grievances"); *see also Wysocki v. Crump*, 838 F. Supp. 2d 763, 770 (N.D. Ill. 2011) ("the question of whether only speech touching upon a matter of public concern is protected by the First Amendment is an unresolved matter in this circuit") (citing

private grievance, could however be protected by the petition clause of the First Amendment against retaliation." *Guth*, 698 F.3d at 586. Indeed, this is what Flanigan's proposed complaint alleges, *see* Dkt. 28-1, ¶ 55, although his Reply instead asserts First Amendment "speech." *See* Dkt. 33, at 5-6, 10-11. But the right to petition protects lawsuits that present "material questions of fact or law."[4] And again, Flanigan's didn't. While the Seventh Circuit had not yet affirmed *Charleston* when Flanigan first filed this case, the district court's decision in *Charleston* had already made clear that well settled Seventh Circuit precedent prohibited Flanigan's due process claims here, *see Charleston*, 2013 WL 1751519, at *3-4 (citing cases), and the Seventh Circuit's affirmance shortly after this case was filed similarly reconfirmed that its conclusion was compelled by myriad Seventh Circuit and Supreme Court decisions. *See Charleston*, 741 F.3d at 773-74 ("We have rejected similar claims of an 'interest in contractually-guaranteed university process' many times . . . . we will be clear once more: a plaintiff does not have a federal constitutional right to state-mandated process.") (citations omitted). It would stretch constitutional principles beyond recognition to bootstrap a First Amendment violation from the failed assertion of due process claims that were demonstrably unviable at the time of filing. *See supra* note 4.

The second and third elements of Flanigan's purported First Amendment claim—whether he "suffered a deprivation that would likely deter first Amendment activity in the future," and whether his asserted First Amendment activity motivated that alleged "retaliatory action"—are also facially wanting. While factual questions by nature, *see Volkman*, 736 F.3d at 1089, Flanigan still must allege sufficient "factual content" to support "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, however, the only purported "retaliation" Flanigan alleges consists of additional procedural flaws in the handling of his various "grievances," *see supra* note 2, all

---

*Bridges* and *Watkins*). The Court also notes decisions in this district resolving this open question in different ways. *See*, *e.g.*, *Van Dyke v. Barnes*, No. 13-cv-5971, 2015 WL 148977, *6 (N.D. Ill. Jan. 12, 2015) ("Under *Bridges and Watkins*, the 'public concern' test does not apply" to non-public employees); *Yano v. City Colls. of Chi.*, No. 08 CV 4492, 2013 WL 3791616, *7 (N.D. Ill. Jul. 19, 2013) ("matters of purely private concern are surely subject to a lower level of protection than speech on public issues"); *Nolan v. Vill. of Dolton*, No. 10 CV 7357, 2011 WL 1548343, *3 (N.D. Ill. Apr. 21, 2011) ("this court is persuaded that the public concern test does not apply to" non-public employees). Like the Seventh Circuit in *Dobbey*, however, this Court believes this "is not the case in which to try to straighten out" whether "the right does not embrace purely personal grievances," *Dobbey*, 574 F.3d at 447 (brackets omitted), because as shown below, Flanigan's filing of this case was not constitutionally protected activity in either case.

[4] *See*, *e.g.*, *Eichwedel v. Chandler*, 696 F.3d 660, 673-74 (7th Cir. 2012) ("claims which present no material questions of fact or law have no First Amendment protection" (quoting *Geske & Sons, Inc. v. N.L.R.B.*, 103 F.3d 1366, 1372 n.9 (7th Cir. 1997), and citing *Bill Johnson's Rests. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("baseless litigation is not immunized by the First Amendment")); *Snyder v. Nolen*, 380 F.3d 279, 290-91 (7th Cir. 2004) (First Amendment right to petition applies to "claims that have a reasonable basis in law or fact" (quoting *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995), and citing *McDonald v. Smith*, 472 U.S. 479, 484 (1985) ("baseless litigation" not immunized by First Amendment)).

9

occurring within a few months of filing his current Complaint. *See* Dkt. 4; Dkt. 28-1, ¶¶ 30-35. This is plainly not enough. For one thing, "no rational jury could find" such "trivial" alleged "harassment" sufficient to "deter free expression," particularly when Flanigan's primary grievance objecting to the failing grade that would have necessitated him repeating his second year of medical school was "*substantiated and granted*." *See* Compl., Dkt. 4, ¶ 25 (emphasis added); *see also Massey*, 457 F.3d at 721 (affirming summary judgment where district court "accurately assessed" that plaintiff's "accusations of harassment were so trivial that no rational jury could find that they would deter free expression").

But in any event, the additional procedural errors that Flanigan now alleges in his proposed First Amendment claim cannot constitute "retaliation" because they are a mere "continuation" of the same procedural errors that precipitated Flanigan's lawsuit in the first place, most (if not all) occurring before Defendants had even responded to Flanigan's current Complaint. *See Chi. United Indus., Ltd. v. City of Chi.*, 669 F.3d 847, 852 (7th Cir. 2012 ("the actions of which CUI complains were not retaliation but simply the continuation beyond the initial five-month period of the cold-should treatment that the City had given the company during that period because of its suspicions"); *Batagiannis v. West Lafayette Comm. Sch. Corp.*, 454 F.3d 738, 743 (7th Cir. 2006) ("this particular claim of retaliation is incoherent on its own terms": "The formal decision in 2004 cannot be 'retaliation' for the state suit when it just confirms something that, according to the litigation, preceded the suit's commencement."). It would defy both law and logic to hold that the same conduct that formed the basis of a plaintiff's claim before filing also provides him with a First Amendment claim afterward, since "a plaintiff has no more right to demand that the defendant roll over and play dead than the defendant has a right to demand this of the plaintiff." *Woodruff*, 542 F.3d at 559 (Posner, J., concurring). To hold otherwise "would set the stage for a federal constitutional suit" every time a plaintiff sues a state or federal agency, "should the subsequent relations between the plaintiff and the agency sour, as they are quite likely to do." *Id*. at 561. And that is no justification for "the heavy artillery of constitutional tort litigation." *Id*. at 560.

### IV. Motion Pursuant to Federal Rule of Civil Procedure 11(c)(2)

This leaves only Defendants' motion for sanctions pursuant to Fed. R. 11(c)(2) against both Flanigan and his counsel. *See* Dkt. 23, ¶ 6. To the extent that motion urges the Court to "grant the University's Motion to Dismiss" as "an additional sanction," *id*. at ¶ 7, it is denied as moot, Defendants' motion to dismiss already having been granted. And to the extent the motion for sanctions seeks $2,394.00 for filing the reply in support of Defendants' motion to dismiss and the motion for sanctions itself, the Court exercises its discretion to deny sanctions here. *See Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993) (district court is vested with "considerable discretion" to deny a request for sanctions). The Court notes, however, that the case for sanctions is close, and the conduct here—particularly the failure of plaintiff's counsel to cite, when opposing Defendants' motion to dismiss, controlling Seventh Circuit authority from a matter in which he was counsel of record—is troubling.

The Court agrees with Defendants' assertion that Flanigan's Complaint in this case, and the arguments made to support it in opposition to Defendants' motion to dismiss, were "not warranted by existing law." *See* Dkt. 23, ¶ 3. As explained above, although the Seventh Circuit had not yet ruled in *Charleston* when Flanigan's counsel filed this case, the district court's

decision there made abundantly clear that well settled Supreme Court and Seventh Circuit precedent precluded Flanigan's claims here. *See Charleston*, 2013 WL 1751519, at * 3-4 (citing Supreme Court and Seventh Circuit decisions). The Seventh Circuit's decision in *Charleston*—issued before Flanigan's Opposition to Defendants' motion to dismiss was filed in this case—only reconfirmed that conclusion. *See Charleston*, 741 F.3d at 773-75 (citing Supreme Court and Seventh Circuit decisions). But "sanctions do not inevitably flow from being wrong on the law." *Harlyn Sales*, 9 F.3d at 1270. "Otherwise Rule 11 sanctions would be imposed whenever a complaint was dismissed, thereby transforming it into a fee shifting statute under which the loser pays," and the Seventh Circuit "has made clear the Rule may not be so interpreted." *Id.*

This Court leans toward that conclusion in this case, because Flanigan's arguments in opposition to Defendants' motion to dismiss attempted (unsuccessfully and, in the Court's view, insupportably) to distinguish *Charleston's* holding by arguing that Flanigan had a property interest based on "an express or implied contract with the medical school." *See* Rule 11 Opp., Dkt. 29, at 4 (quoting *Charleston*, 741 F.3d at 773). As also explained above, this argument was similarly unwarranted by existing law, including *Charleston*, given other language in that decision making clear that such an argument did not apply to the "contractually-guaranteed university process" on which Flanigan was relying. *See Charleston*, 741 F.3d at 773-74. Still, Defendants' Rule 11 letter and motion for sanctions did not address this purportedly new theory, and thus failed to allow Flanigan and his counsel an opportunity to withdraw it. *See* Dkt. 23.

For this reason alone, the Court declines to impose sanctions here. In so doing, however, the Court pauses to note that the most disturbing aspect of Flanigan's Opposition to Defendants' motion to dismiss was not merely the frivolous arguments it pressed, but its failure even to cite the Seventh Circuit's decision in *Charleston* which exposed those arguments as frivolous. It is one thing to attempt to evade controlling authority with a specious argument; it is quite another to ignore that authority altogether, particularly where (as here) the lawyer ignoring it was counsel of record in the proceeding that produced it. But this, too, is an issue unaddressed in Defendants' Rule 11 letter and motion. *See* Dkt. 23 and 23-3. As a result, Flanigan's counsel has not been asked to explain it. Although the Court is hard-pressed to imagine what that explanation might be, it surmises that Flanigan's counsel might attempt to justify his failure to cite the Seventh Circuit's decision in *Charleston* in opposition to Defendants' motion to dismiss this case based upon his planned petition for certiorari in *Charleston* itself—a fact he notes in opposition to Defendants' motion for sanctions (though incorrectly representing that Charleston was "appealing" the Seventh Circuit's decision to the Supreme Court). *See* Dkt. 29, at 4 n.1. This Court flatly rejects that notion. To be clear, neither an intended nor pending certiorari petition excuses the failure to cite controlling authority in any case, and certainly not when that authority affirms a district court decision so central to the briefing as *Charleston* was here.

Had this been the basis for Defendants' Rule 11 letter and motion, the result here might be different. But as it wasn't, Defendants' Motion Pursuant to Rule 11(c)(2), Dkt. 23, is denied.

*[signature]*

Dated: March 31, 2015                John J. Tharp, Jr.
United States District Judge